Luz Diaz Govin, Respondent, *v.* Luciana Govin de Miranda, Individually and as Executrix, etc., Appellant.

(Argued December 13, 1893; decided December 22, 1893.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 30, 1893, which overruled defendant's exceptions and modified judgment in favor of plaintiff, entered upon a verdict directed by the court, by increasing the interest allowed upon the damages from four to six per cent, and as modified affirmed the same.

This action was brought to recover ten $1,000 bonds of the Chicago, Burlington and Quincy Railroad Company, Iowa division. Defendant is the executrix of Felix Govin y Pinto, who died May 23, 1891, and plaintiff claims that at the time of his death he had in his possession the bonds in suit which belonged to plaintiff, and that defendant became possessed of them as his executrix, and upon a demand by plaintiff's attorneys, refused to deliver them. The decedent had, at the time of his death, thirty-eight $1,000 bonds of the kind sought to be recovered herein, upon which there were no past-due coupons when defendant received them. In a box in decedent's safe, two sealed evelopes were found addressed to plaintiff, one of which contained a paper in Spanish, of which the following is a translation:

"In possession of Ramon M. Estevez there are sixty thousand dollars, in U. S. Bonds, which I declare belong to the three children, brothers and sisters, Emilia, Felix and Guillermina Govin, residents of this city, living at 147 E. 39 St. Besides in my box there is a legacy which contains $29,000 R. R. Bonds, Iowa Division; of these ten thousand belong to Luz Diaz y Sanchez, mother of the above mentioned individuals; she has an obligation (or note) for same

signed by me, and the rest belongs to the above mentioned Emilia, Felix and Guillermina in equal parts.

" No one may go contrary or against this declaration as it is based under conscience and justice ; to me alone is reserved the right to do with this money as I deem proper.

" NEW YORK, *Dec. 8th,* 1883.

"FELIX GOVIN Y PINTO.

" Acknowledged before me ⎫
    this 15th day of Decem- ⎬
    ber, 1883. ⎭

"JAS. W. HALE,
    "*Notario Publico,*
        "4 Hanover St."

The other envelope contained $50,000 in U. S. four per cent certificates.

The parties plaintiff and defendant differ as to the translation of this Spanish paper. They differ as to the word "legajo," which the plaintiff translates "legacy;" the defendant contends it should be translated "small parcel." They also differ as to the word "vale," which is translated "note," and which the defendant says should be "certificate of deposit," or at best, "legal obligation."

There was no package of twenty-nine bonds as recited in said paper in the decedent's possession at the time of his death, but the said thirty-eight bonds were found in the same box in the safe as contained the envelopes above mentioned.

Defendant's answer denied all the allegations in the complaint and interposed by way of defense a supplemental answer, which alleged that in June, 1892, plaintiff brought an action against defendant as executrix upon the following instrument :

" Let it be known that Mrs. Luz Diaz y Sanchez has given me ten thousand dollars in currency as a deposit. New York. 25th October, 1870.

"(It is $10,000.)            FELIX GOVIN."

That a verdict was rendered in plaintiff's favor in said action for $10,000 and interest, and a judgment entered thereon for $10,661.85 ; that the $10,000 mentioned in said

paper, and for which a recovery has been had, was used by the decedent to purchase the bonds sought to be recovered in this action.

Further facts are stated in the opinion, which is given in full.

" We have just determined in another case * founded upon the same general facts that the plaintiff is *prima facie* entitled to recover the bonds claimed, by force of the admission of ownership contained in the paper which the decedent executed before his death. That conclusion, however, does not reach the further question here involved, and raised by the defendant's answer, whether such ownership has become divested and extinguished by the act of the plaintiff in suing and recovering upon the certificate of deposit for ten thousand dollars signed by the decedent and which was produced from the possession of the plaintiff. The language of the certificate as translated from the Spanish was this : ' Let it be known that Mrs. Luz Diaz y Sanchez has given me ten thousand dollars in currency as a deposit. New York, 25th Oct., 1870. Felix Govin.' This was the only paper produced which imported a liability of ten thousand dollars due to the plaintiff from the decedent, and if in fact there was no other it must be deemed the one to which Govin referred in the declaration which admits the ownership of the bonds, and which would establish the defense. Whatever may be the true and accurate translation of that document which was written in Spanish and about which the witnesses differ, one thing at least is true of it, and that is that the decedent admitted the plaintiff's ownership of the ten thousand dollars of bonds as an extinguishment and satisfaction of some corresponding liability evidenced by a paper in her possession. He did not mean to give her the bonds. The declaration effects no such gift. It operates clearly as a satisfaction of some corresponding debt due to the plaintiff which would be at once extinguished upon the acceptance by the creditor of the bonds applied to the intended payment. The certificate of deposit represented just such an outstanding debt of identical amount,

---

* *Govin* v. *de Miranda, ante,* page 474.

and naturally and reasonably the reference would be to that obligation, which had been sued upon and paid, and left the ownership of the bonds in the estate of Govin as the defense claimed, unless there are further facts to the contrary. That the decedent received from Mrs. Sanchez in 1870 ten thousand dollars as a deposit; that he invested it for her and paid her the interest earned; that in 1883 it was represented by the bonds in question; that he deemed it prudent to so declare; and that in so doing and to avoid a double liability, he described the bonds as for an obligation of his to an equal amount held by her; harmonizes the language with the facts and is an extremely probable inference.

"But there is claimed to be and there is proof tending to the contrary, and upon which the trial court held as matter of law that the plaintiff was entitled to recover, and no defense existed. It is first said, and one or more witnesses so testified, that the Spanish word 'vale' means a promissory note, and cannot mean a certificate of deposit, and so the reference was not to the latter. The words are, '*para un valè de igual suma firmado por mi.*' The drift of the evidence is very strong, that where a promissory note, specificially and as distinguished from any other obligation, is meant, the proper word in Spanish to describe it is 'pagare;' but that where some general obligation is intended, the appropriate word is 'vale.' The authority referred to by the witnesses as standard favors that contention, and a little reflection upon the probable origin and derivation of the word 'vale,' and the multitude of its definitions, points to the same result. A correct translation of the words of reference might justly be found by a jury to be, 'for an obligation of equal amount signed by me,' and so read, the reference could be, and naturally would be to the outstanding certificate of deposit. Indeed, the use of the general word 'vale' instead of the specific term 'pagare' might well be deemed to indicate that a promissory note was not referred to. So that, upon the assumption that such a note existed, the question to which of the two liabilities the decedent referred became upon the proofs one of fact and not of law.

"But the defendant disputes the assumption. Was there **any**

such promissory note outstanding against the decedent and in the hands of the plaintiff, and did Govin owe her, not merely one sum of ten thousand dollars, but a second one of the same amount, to which it is possible to say the decedent intended to refer? No such note is produced, and it is quite possible for the defendant to ask a jury to say that it never in fact existed. The proof that it did comes from Emilia and Mr. Kling, one the daughter and the other the attorney of the plaintiff; both naturally desirous of a recovery, and so situated that their evidence is proper matter for the consideration of a jury, and not necessarily conclusive. (*Gildersleeve* v. *Landon*, 73 N. Y. 609; *Wohlfart* v. *Beckert*, 92 id. 490.) Emilia testified to having seen such a note by answering 'Yes' to a leading question. The plaintiff's counsel asked: 'Did you see among the papers, or was there ever in your possession, a note of $10,000, dated in 1883 and signed by your father?' The counsel for the defendant objected and moved to strike out the answer, and the court said: 'I will strike it out if he does not produce it.' No such note was produced, and whether the court, in deciding the case by directing a verdict for the plaintiff, relied upon this evidence or not it is impossible for us to know. Emilia said two other things. One was that she gave what the plaintiff's counsel called 'that note' to him, and the other was that the note was in 'English and Spanish both.' These statements are deemed by the defendant material to a proper identification of the real paper which she saw and held. Then the plaintiff's attorney, Mr. Kling, was sworn. He testified to having received three papers; the first was 'Exhibit B,' which is the original declaration in Spanish; the second was 'the receipt or deposit,' by which, of course, he meant the certificate of deposit, the amount of which has been recovered; and the third was 'a paper purporting to have been signed by Mr. Govin in English.' Now what Emilia said she gave him was a note in both Spanish and English, and there seems to be a mistake somewhere. Mr. Kling's statement does not explicitly call the paper a promissory note. After detailing its loss and his vain search for it he adds: 'This paper purported to be a paper which in substance, in English, as I recollect it was that

he promised to pay Mrs. Sanchez the sum of $10,000.' It is
urged for the defense that this careful and guarded descrip-
tion is also ambiguous, and might apply not only to a promis-
sory note, but equally to an English translation of the Spanish
declaration which admitted a liability of $10,000, and pro-
vided for its payment. It is added that Mr. Kling does not
by his evidence exclude that possibility, and that his language
indicates some uncertainty in his own mind. It is further
sought to throw doubt upon the existence of the alleged note
by additional evidence. After Govin's death Frederick Lewis
was appointed temporary administrator. He was called upon
by Felix Govin, a son of the decedent and Mrs. Sanchez, who
in behalf of the family presented their claims against the
estate. That he presented all that he supposed they had must
be assumed, and they did consist of *three* papers, and we know
what they were. Mr. Lewis says that one was the certificate
of deposit dated in 1870 : the second was a paper in Spanish
'signed in 1883,' and 'in relation to $10,000 worth or
$29,000 worth of Chicago, Burlington & Quincy railway
bonds, Iowa division,' which of course was the original decla-
ration in Spanish ; and the third was, in the language of the
witness, 'worded something similar to this, although the
exact words I don't remember, but it purported to say that
there were in his possession $10,000 worth of railroad bonds,
Chicago, Burlington & Quincy, Iowa division, for which the
note was given. This was in English and signed by him.'
The third paper presented by Felix was clearly a transla-
tion of the Spanish declaration. No promissory note was
produced to Lewis, but instead, the translation of the
Spanish paper. Here it is argued we have a reasonable
explanation of what Emilia said. The paper she saw was
in both English and Spanish. That corresponds with the
Spanish declaration and its English translation. It may
reasonably be argued that her evidence does not indicate
a promissory note, for why should Govin, all whose papers
were in his native tongue, give to Mrs. Sanchez, speaking the
same language, a note in Spanish for $10,000, and also at the
same time a copy in English, or put the one in a mixture of
both languages? There was no need of it, no motive for it,

and if there was a copy it involved the risk of two notes where only one was intended. And the same trouble reaches the evidence of Mr. Kling, whose third paper was in English; and the criticism addressed to a jury might be that he did not call such third paper a promissory note because himself uncertain in his recollection, and that in the multitude of documents which he says he received he may possibly have confused one paper with another. So that, whatever just force may be given to his testimony it is not so conclusive as to settle the existence of the note as matter of law, but leaves that question open as one of fact. And in support of the theory that there was no promissory note comes the fact already adverted to that the decedent, who was a lawyer of intelligence and ability, and likely to select the apt and appropriate word to convey his thought, did not use the specific word 'pagare,' but selected the word 'vale,' broad enough to denote an outstanding obligation such as the certificate of deposit was.

"It should be added that certain obvious inferences from the relation and conduct of the parties might reasonably be urged upon the attention of a jury as bearing upon the intrinsic probability or improbability of the respective theories, but their discussion might be unwise in view of the necessity for a new trial; and I think enough has been said to justify our conclusion that it was a manifest error to decide the case as matter of law and direct a verdict for the plaintiff. The evidence should have been submitted to the jury.

"The judgment should be reversed and a new trial granted, costs to abide the event."

*Edward C. James* for appellant.

*Abram Kling* for respondent.

FINCH, J., reads for reversal and new trial; all concur, except MAYNARD, J., not voting.

Judgment reversed.